UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

UNITED STATES OF AMERICA,

          Plaintiff,

v.

D-2  ALEXANDRIA DODGE,

          Defendant

Case No. 21-cr-20184

Hon. MATTHEW F. LEITMAN
United States District Judge

### United States' Response to Defendant's Motion for Reinstatement of Bond

The United States opposes defendant Alexandria Dodge's motion for reinstatement of bond because she has violated the conditions of her release and poses a danger to the community. The grand jury has indicted her for distributing over 50 grams of actual methamphetamine—an offense that carries a mandatory minimum of ten years' imprisonment. Considering Dodge's history of violent acts, the large amount of pure methamphetamine that she distributed, and her likely untreated methamphetamine addiction, the detention factors under the Bail Reform Act weigh in favor of detention. All of this supports the revocation of her bond under 18 U.S.C. § 3148(b).

I.      **Background**

A grand jury indicted Dodge for distributing fifty grams or more of methamphetamine last December. (ECF No. 1, PageID.1-3). This offense carries a ten-year mandatory minimum sentence. (ECF No. 12, PageID.27–28.). On March 23, 2021, the magistrate held a detention hearing and ordered Dodge released pending trial. (ECF Nos. 18–20, 24, PageID.34–36, 42–46). Persuaded by the argument that Dodge would live with a third-party custodian (her step-father) who was a former police officer, the Magistrate ordered that Dodge reside with him while released. (*Id.*) The order setting the conditions of her release required Dodge to submit to random drug testing, participate in drug treatment, and abide by a curfew, among other conditions. (ECF No. 24, PageID.44.) But since then, several developments have occurred.

According to Dodge's pretrial services officer, the third-party custodian "requested she leave his residence and he be removed as her TPC." The Court modified her bond conditions accordingly. (ECF No. 55, PageID.211.) Initially, Dodge's mother was to "assume the role" as third-party custodian. But that did not materialize and Dodge resided with her nephew for a while. As of August 2021, Dodge missed "two of her three random drug tests and both of her treatment sessions in July." She had also "been coming home past curfew," but was mostly compliant with curfew and location monitoring. What's more, the pretrial services

officer received reports in September 2021 that Dodge was "selling and using drugs" and the leaseholders requested that she be removed from the house. (ECF No. 56, PageID.212.)

In September 2021, a state grand jury charged Dodge with conspiring to assault with intent to murder, kidnap, extort, and unlawfully driving away a car. (ECF. No. 56, PageID.212.) She has been unable to post bond. (*Id.*). The date of offense for these crimes is December 17, 2019. (*Id.*).

In response to the new charges and her conduct while on bond, the Court cancelled her federal bond. (*Id.*). Dodge now seeks to have that bond reinstated. (ECF No. 62, PageID.230.)

## II.   Analysis

18 U.S.C. § 3148(b) provides for revoking an order of release:

The judicial officer shall enter an order of revocation and detention if, after a hearing, the judicial officer--
(1) finds that there is—
(A) probable cause to believe that the person has committed a Federal, State, or local crime while on release; or
(B) clear and convincing evidence that the person has violated any other condition of release; and
(2) finds that—
(A) based on the factors set forth in section 3142(g) of this title, there is no condition or combination of conditions of release that will assure that the person will not flee or pose a danger to the safety of any other person or the community; or
(B) the person is unlikely to abide by any condition or combination of conditions of release.
  If there is probable cause to believe that, while on release, the person committed a Federal, State, or local felony, a rebuttable presumption arises that no condition or combination of conditions will assure that the person will not pose a

3

danger to the safety of any other person or the community. If the judicial officer finds that there are conditions of release that will assure that the person will not flee or pose a danger to the safety of any other person or the community, and that the person will abide by such conditions, the judicial officer shall treat the person in accordance with the provisions of section 3142 of this title and may amend the conditions of release accordingly.

As an initial matter, § 3148(b)(1) and (b)(2) are written in the conjunctive, so both must be satisfied to revoke release. *United States v. Wilks*, __F.4th__, 2021 WL 4739291, *5 (7th Cir. 2021) ("A finding that the defendant violated a release condition does not alone permit revocation; the judge must make findings under both § 3148(b)(1) and (b)(2) before he may revoke release.") But both of these sections contain disjunctive subsections, with either subsection (A) or (B) sufficing as an independent basis for revocation. *See, id*.

The reasons requiring revocation here thread through § 3148(b)(1)(B) and (b)(2)(A)&(B). The Court should make findings under both sections. At a minimum, there is clear and convincing evidence to believe that Dodge violated conditions requiring her to submit to drug testing, attend drug treatment, and abide by a curfew under subsection (b)(1)(B). Second, the § 3142(g) factors weigh in favor of detention and it is unlikely that she will abide by the conditions of her release under subsection (b)(2)(A)&(B).

The Pretrial Services Officer will provide evidence concerning violations of pretrial release conditions under § 3148(b)(1). As for § 3148(b)(2), the Bail Reform Act's detention factors favor revocation of bond.

4

### A. Detention Factors under 18 U.S.C. § 3142(g).

In deciding whether there are conditions of release that will reasonably assure the safety of any other person and the community, the Court considers four factors: (1) the nature and circumstances of the offense charged, including whether the offense involved a firearm; (2) the weight of the evidence against the person; (3) the history and characteristics of the person, including the person's character, community ties, criminal history . . . among other factors; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release. 18 U.S.C. § 3142(g).

### 1. The History and Characteristics of the Defendant.

Dodge's criminal history shows multiple acts of violence. Start with her pending case in state court. A grand jury recently charged her with conspiracy to assault with intent to murder, conspiracy to kidnap, conspiracy to commit extortion, and unlawfully driving away a motor vehicle. (ECF. No. 56, PageID.212.) She has been unable to post bond in the state case, which potentially moots the issue here. The federal Magistrate who initially released Dodge to the third-party custodian was not aware of these charges and their underlying facts.

The victim in that case is Dodge's estranged husband. (Ex. 1). Dodge set up a scheme to extort money using the victim. (*Id.*). At Dodge's request, the victim stole a vehicle. (*Id.*). Dodge then shared her text messages with her coconspirators

that showed that the victim stole their car. (*Id.*). The coconspirators then found the victim and tortured him: They hit him with a claw end of a hammer, bound him, beat him with objects, and burned him with hot steel and cigarettes. (*Id.*). One coconspirator pointed a gun at the victim's head and pulled the trigger to terrorize him. (*Id.*). As the torture unfolded, Dodge solicited $400 from the victim's friend for his release. (*Id.*). These events occurred in December 2019. (*Id.*).

Dodge has committed other violent acts. In 2015, Dodge assaulted two victims, including her estranged husband. (Ex. 2). She hit the first victim in the head with a tea pot and threw a ceramic lighthouse into the second victim's face, causing a bloody nose. (*Id.*). She then grabbed a broken ceramic piece and tried to cut the first victim's chest with it. (*Id.*).

When the police arrested her, she resisted by attempting to head butt the officer. (*Id.*). She also broke the passenger side mirror of the police car. She yelled at, kicked, and head-butted the officers during the arrest. (*Id.*). This culminated in Dodge smashing her head against the window of the police car so hard that she shattered it. (*Id.*). For all this, she was convicted in Florida of battery causing bodily harm, resisting an officer with violence, and criminal mischief. (Ex. 3). She later violated her probation and was sentenced to community service, starting 90 days after the birth of her child. (*Id.*).

In June 2018, Dodge assaulted two more victims. She drove over to their house with her own two young children in her car. She pounded on her victims' front door and demanded that her husband come outside. (Ex. 4). The two victims explained to her several times that he was not there, but she refused to believe it. (*Id*.). After throwing yard ornaments and flower pots at the front door, she tried to shove her way in. (*Id*.). The victims resisted the intrusion. (*Id*.). Dodge then threw an object at one victim's face, causing injury and bleeding. (*Id*.). The victim pushed Dodge off the porch, and she began punching the victim in the face several times. (*Id*.). The victim wrestled Dodge to the ground and asked the other victim to call 911. (*Id*.).

When the police arrived, they saw one victim bleeding from the mouth with her chest coated in blood. (*Id*.). After the police arrested Dodge, she repetitively smashed her head against the police car windows. (*Id*.). And she did all this while her two young children were there in her car. (*Id*.). Although this case was charged, it was later dismissed. (Pretrial Services Report, page 5).

To make matters even worse, Dodge likely lied to pretrial services about her substance abuse history. She denied using methamphetamine. (Pretrial Services Report, page 4). This was likely done to bolster her chances of being released pending trial. Her husband acknowledged her addiction to methamphetamine. (Ex. 1). When she was booked at the jail in this case in March 2021, she had suspected

methamphetamine in her bra. (Ex. 5). A year before, she was with her codefendant Michael Fraley in a house searched by law enforcement because of other methamphetamine trafficking. (ECF No. 40, PageID.95–96.) According to her pretrial services officer, Dodge missed "two of her three random drug tests and both of her treatment sessions in July" of this year. What's more, the pretrial services officer received reports in September 2021 that Dodge was "selling and using drugs" and the leaseholders requested that she be removed from the house. (ECF No. 56, PageID.212.) All of this is consistent with an untreated methamphetamine addict that is in denial.

This factor weighs in favor of detention.

**2.    The Nature and Circumstances of the Offense Charged.**

On December 3, 2020, Dodge intentionally distributed more than fifty grams of methamphetamine to a confidential informant ("CI") at her house. (ECF No. 1, PageID.1-3.) More specifically, the CI, wearing a recording device, bought about 53 grams of pure crystal methamphetamine from Dodge for $1,200. During the transaction, Dodge and the CI discussed the dirty look of the methamphetamine. Dodge explained that we just got it "straight from Mexico" and it was "straight yellow." She added that they cleaned it up a bit and to let her know when the CI needed more methamphetamine.

One week later, law enforcement officers executed a search warrant at that same house. (ECF No. 40, PageID.100.) Inside, officers seized suspected drugs, digital scales, a firearm, cash, and sandwich baggies. (*Id*.). Dodge and a third party were in the house when officers executed the warrant. (*Id*.).

Distributing over 50 grams of pure crystal methamphetamine weighs in favor of detention, consistent with the rebuttable presumption of detention for this offense. 18 U.S.C. § 3142(e)(3)(A).

### 3. The Weight of the Evidence.

The weight of the evidence against defendant refers to the weight of evidence of dangerousness, not the weight of evidence of defendant's guilt. *United States v. Stone*, 608 F.3d 939, 948 (6th Cir. 2010). Considering Dodge's history of violent acts, the large amount of methamphetamine she distributed, and her likely untreated methamphetamine addiction, the weight of evidence that she is a danger to the community is significant. This factor favors detention.

### 4. The Nature and Seriousness of the Danger Posed.

As for the final factor, the nature and seriousness of the danger to any person or the community that would be posed by his release, she fares no better. The nature and seriousness of the danger is significant to addicts and the community. The risk here is that Dodge will continue to ignore court orders and distribute toxic drugs to others, putting users at risk of bodily harm while also harming the

community. As for drug dealers, "[o]ur Court routinely affirms, on dangerousness grounds, the pre-trial detention of run-of-the-mill drug dealers, even without any indication that the defendant has engaged in violence . . . To be sure, drug trafficking is a serious offense that, in itself, poses a danger to the community." *United States v. Stone*, 608 F.3d 939, 947 (6th Cir. 2010) (fn. 6). In another drug trafficking case, the Sixth Circuit observed that the defendant "victimized individuals (by selling addictive drugs to them) and the community (by making addictive drugs readily available in the area)." *United States v. Hodges*, 641 F. App'x 529, 532 (6th Cir. 2016). This factor, along with *all* of the others, also favors detention.

Because there is clear and convincing evidence that Dodge violated conditions requiring her to submit to drug testing, attend drug treatment, and abide by a curfew, she is subject to revocation under § 3148(b)(1). The § 3142(g) factors weigh in favor of detention and it is unlikely that she will abide by the conditions of her release under § 3148(b)(2). Her bond should therefore be revoked.

### III.  Conclusion

Since the Magistrate initially released Dodge, three material changes have occurred. First, the proposal that a former police officer would act as her third-party custodian, which heavily influenced the decision to release, has disintegrated. Second, Dodge has violated the conditions of her release. Third, the recent criminal

charges for participating in the torture, kidnapping, and extortion of her estranged husband show an increased risk of dangerousness to the community. The combination of these demonstrates that there is no condition that can reasonably assure the safety of the community if she were released. Consistent with the rebuttable presumption of detention for distributing over 50 grams of methamphetamine, the Court should deny Dodge's motion to reinstate bond.

        Respectfully submitted,

        SAIMA S. MOHSIN
        Acting United States Attorney

Dated: December 17, 2021        s/BLAINE LONGSWORTH
        Assistant United States Attorney
        600 Church Street | Flint, MI 48502-1280
        Phone: (810) 766-5177
        Fax: (810) 766-5427
        blaine.longsworth@usdoj.gov
        P55984

## *CERTIFICATION OF SERVICE*

I hereby certify that on, December 17, 2021, I electronically filed the foregoing document with the Clerk of the Court using the ECF system, which will electronically serve all ECF participants.

s/Jessica Stanton<br>
United States Attorney's Office