UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

United States of America,

               Plaintiff,

v.

D-2 Alexandria N. Dodge,

               Defendant.

Case No. 21-cr-20184

Hon. Shalina D. Kumar
United States District Judge

---

## United States of America's Sentencing Memorandum

---

Defendant Alexandria Dodge distributed about 55 grams of pure methamphetamine to a confidential informant during controlled purchase by law enforcement. She has since pleaded guilty to distributing 50 grams or more of methamphetamine, without a Rule 11 agreement. Dodge also has a history of violent assaults. The common theme that threads through Dodge's history and the offense of conviction is her willingness to harm others. In light of the factors set forth in 18 U.S.C. § 3553(a), the United States seeks a sentence of 80 months' imprisonment, which is within the applicable guideline range if the Court finds that she is safety valve eligible.

**I.      Sentence Considerations**

In determining defendant's sentence, the Court must consider the "nature
and circumstances of the offense and the history and characteristics of the
defendant." 18 U.S.C. § 3553(a)(1). The sentence should reflect the seriousness of
the offense, promote respect for the law, provide just punishment, afford adequate
deterrence, and protect the public from further crimes by the defendant, among
other factors. 18 U.S.C. § 3553(a)(2). Although advisory, the sentencing guidelines
are the "starting point" and "initial benchmark" for the sentence, which should be
sufficient, but not greater than necessary to comply with the purposes of § 3553(a)
(2). *United States v. Booker*, 543 U.S. 220 (2005); *Gall v. United States*, 552 U.S.
38, 49 (2007).

**A.      Sentencing Guidelines Calculations.**

Dodge has pled guilty to distributing 50 grams or more of
methamphetamine. (PSR ¶ 8). The presentence investigation report calculates the
sentencing guidelines at 78–97 months if she is safety valve eligible. (PSR ¶ 67). If
not, then the mandatory minimum of ten years' imprisonment applies. (*Id.*). The
government agrees with these calculations. The total offense level is 27 due to a
base offense level of 30, reduced by three levels for acceptance of responsibility.
(PSR ¶¶ 21, 28–30). Dodge's prior convictions yield a criminal history category of

II. (PSR ¶¶ 31–33). A total offense level of 27 combined with criminal history category II results in a guideline range of 78–97 months. (PSR ¶ 67).

### B.    Safety Valve Eligibility

Dodge appears to satisfy the criteria, under 18 U.S.C. § 3553(f)(1), that authorize the Court to impose a sentence below the mandated minimum penalty by statute. (PSR ¶ 65). Dodge has been convicted of a drug trafficking offense under 21 U.S.C. § 841; has a total of two criminal history points based on two distinct offenses; did not use violence, threats, or a firearm to commit her offense; did not cause death or serious bodily injury; was not a leader of others in committing the offense; and has provided the government truthful information about her offense. (PSR ¶¶ 5, 8, 13, 31–33, 65).

### C.    The Nature of the Offense.

This case started with a confidential informant buying methamphetamine inside Dodge's house and ended when law enforcement officers searched her house with a warrant. (PSR ¶¶ 12–14). On December 1, 2020, Dodge was present when Insane Cobras gang member—and boyfriend—Michael Fraley (D-1) sold 26 grams of methamphetamine to a confidential informant. (PSR ¶¶ 12, 15). Two days later, Dodge intentionally distributed more than 50 grams of methamphetamine, in two separate bags, to the confidential informant inside her house. (PSR ¶ 13) More specifically, the informant bought about 55 grams of pure crystal

methamphetamine from Dodge for $1,200. (*Id.*). During the transaction, Dodge explained that we just got the methamphetamine "straight from Mexico" and it was "straight yellow."[1] She remarked that they cleaned it up a bit and asked the informant to let her know when he needed some more.

These controlled buys led to a search warrant for Dodge's house a few days later. (PSR ¶ 14). When executing the search warrant, officers seized suspected drugs, digital scales, a firearm, cash, and sandwich baggies. (*Id.*). Officers also arrested Dodge there, but released her within two days. (*Id.*). Several months later, when officers arrested Dodge again, suspected crystal methamphetamine tumbled out of her bra as she was searched at the jail for contraband. (PSR ¶ 15).

## D.    History and Characteristics.

Dodge is 31 years old, married, and the mother of three children who remain under her brother's guardianship and custody. (PSR ¶¶ 41, 44). In her words, Dodge was raised by a supportive, loving mother and a step-father, who worked as a police officer, that was strict. (PSR ¶ 42). Unlike some defendants that grow up in abusive and neglectful environments, Dodge did not carry similar childhood experiences with her into adulthood. She graduated from high school and later attended some college. (PSR ¶¶ 60–61). Her work history is spotty though, and she

---

[1] Statements captured on the recording device that the informant wore during the drug deal inside Dodge's house.

has been unemployed since 2019. (PSR ¶¶ 62–63). Dodge now admits that she has a severe methamphetamine addiction and an alcohol problem, which she acknowledges has caused most of the problems in her life. (PSR ¶¶ 58–59). When attempting to gain pretrial release, Dodge denied using methamphetamine. (Pretrial Services Report, pg. 4).

Dodge's criminal history shows multiple acts of violence. In 2015—before she started using methamphetamine—Dodge assaulted two victims, including her estranged husband. (PSR ¶¶ 31, 58). She hit the first victim in the head with a tea pot and threw a ceramic lighthouse into the second victim's face, causing a bloody nose. (PSR ¶ 31). She then grabbed a broken ceramic piece and tried to slice the first victim's chest with it. (*Id.*).

When the police arrested her, she resisted by attempting to head butt the officer. (*Id.*). She also broke the passenger side mirror of the police car. She yelled at, kicked, and head-butted the officers during the arrest. (*Id.*). This culminated in Dodge smashing her head against the window of the police car so hard that she shattered it. (*Id.*). For all this, she was convicted in Florida of battery causing bodily harm, resisting an officer with violence, and criminal mischief. (*Id.*). She later violated her probation and was sentenced to community service, starting 90 days after the birth of her child. (*Id.*).

In June 2018, Dodge assaulted two more victims. She drove over to their house with her own two young children in her car. She pounded on her victims' front door and demanded that her husband come outside. (Exhibit 1). The two victims explained to her several times that he was not there, but she refused to believe it. (*Id.*). After throwing yard ornaments and flower pots at the front door, she tried to shove her way in. (*Id.*). The victims resisted the intrusion. (*Id.*). Dodge then threw an object at Victim-1's face, causing injury and bleeding. (*Id.*). Victim-2 pushed Dodge off the porch, and she began punching Victim-2 in the face several times. (*Id.*). Victim-2 wrestled Dodge to the ground and asked Victim-1 to call 911. (*Id.*).

When the police arrived, they saw Victim-1 bleeding from the mouth with her chest coated in blood. (*Id.*). After the police arrested Dodge, she repetitively smashed her head against the police car windows. (*Id.*). And she did all this while her two young children were present in her car. (*Id.*). Although this case was charged, it was later dismissed. (PSR ¶ 34).

Dodge has also committed misdemeanor larceny by false pretenses and was sentenced, in 2020, to seven days in jail. (PSR ¶ 32). All this supports a substantial sentence.

E.      **Seriousness of the offense, deterrence, and protection of the public.**

Trafficking over 50 grams of actual methamphetamine is a serious offense carrying a minimum sentence of ten years and maximum punishment of life in prison. Methamphetamine is a highly addictive and harmful substance that often ruins the lives of those held in its grip. "Chronic meth users can exhibit violent behavior, anxiety, confusion, insomnia, and psychotic features including paranoia, aggression, visual and auditory hallucinations, mood disturbances, and delusions — such as the sensation of insects creeping on or under the skin." Drug Fact Sheet: Methamphetamine (dea.gov). Dodge sought to fund her lifestyle and finance her addiction by distributing this poison to her customers, harming them and their families. Distribution of illegal, destructive drugs causes damage to the community: "Society as a whole is the victim when illegal drugs are being distributed in its communities." *United States v. Green*, 532 F.3d 538, 549 (6th Cir. 2008); *United States v. Hodges*, 641 F. App'x 529, 532 (6th Cir. 2016).

Congress has determined that a sentence of ten years in prison is the minimum a defendant should typically receive for distributing more than 50 grams of methamphetamine. But Dodge appears safety valve eligible, so the Court need not impose that minimum sentence. A sentence within the applicable guidelines (78–97 months), however, is necessary to provide specific deterrence to Dodge and also promote general deterrence. Specific deterrence seeks to dissuade an

individual defendant from committing future crimes, while general deterrence aims

to have the same effect on "the population at large." *United States v. Camiscione*,

591 F.3d 823, 834 (6th Cir. 2010). An 80-month sentence will specifically deter

Dodge because it is a substantial sentence even though it is 40 months fewer than

the statutory minimum. An 80-month sentence will show other would-be drug

dealers that distributing large amounts of methamphetamine has "real"

consequences, thus advancing the goal of general deterrence.

The common theme that threads through Dodge's history and the offense of

conviction is her willingness to harm others. Whether it is punching, throwing

objects, headbutting, or distributing large amounts of methamphetamine, her

criminal actions directly harm others. A sentence within the guidelines is necessary

to promote respect for the law, provide deterrence and just punishment, and protect

the public from Dodge committing additional crimes. "Not all [§ 3553(a) factors]

are important in every sentencing; often one or two prevail, while others pale."

*United States v. Bridgewater*, 479 F.3d 439, 442 (6th Cir. 2007). Protecting the

public should be one of the prevailing factors here.

## II.      Conclusion

The government recommends a sentence of 80 months based on the factors

set forth in 18 U.S.C. § 3553(a). The government also requests a minimum term of

four years supervision to follow any term of incarceration.

<div style="margin-left: 45%;">

Respectfully submitted,

Dawn N. Ison
United States Attorney

</div>

Dated: October 5, 2022                *s/Blaine Longsworth*
Blaine Longsworth (P55984)
Assistant United States Attorney
210 Federal Building
600 Church Street
Flint, Michigan 48502
Telephone: (810) 766-5031
Email: blaine.longsworth@usdoj.gov

## *CERTIFICATION OF SERVICE*

I hereby certify that on, October 5, 2022, I electronically filed the foregoing document with the Clerk of the Court using the ECF system, which will electronically serve all ECF participants.

<div align="right">

s/Jessica Stanton
United States Attorney's Office

</div>